36 F.3d 127
 308 U.S.App.D.C. 313
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellant,
v.
Neil WILSON, also know as Darrell Wilson, Appellee.
 No. 93-3185.
 United States Court of Appeals, District of Columbia Circuit.
 May 5, 1994.
 
 Before: SILBERMAN, BUCKLEY, and WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 36(b) (January 1, 1994). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby reversed and remanded for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 The government appeals from the judgment of the district court granting appellee's motion to suppress certain evidence on the grounds that appellee had been arrested without probable cause. We hold that the police had merely "stopped" appellee within the meaning of Terry v. Ohio, 392 U.S. 1 (1968), and that they had a reasonable suspicion, based on "specific and articulable facts," id., at 21, to do so. Accordingly, we reverse the district court and remand for further factfinding.
 
 I.
 
 5
 The undisputed facts are as follows. Having departed a train that originated in New York, a so-called "source city" for drugs, appellee was approached by a plainclothed police officer. The officer did not display a weapon. Rather, the officer displayed his identification and introduced himself as a police officer. At that point, Wilson threw down his duffle bag (his only piece of luggage) and, declaring "I didn't do nothing," began running at full speed through Union Station. According to the police officers' testimony (contradicted in part by appellee's), in the course of his flight Wilson could be seen reaching repeatedly for the left front pocket of his coat, a gesture that, again according to the police officers' testimony, gave rise to their fear that Wilson was reaching for a weapon. Wilson was tackled in front of the McDonald's restaurant in Union Station by a civilian bystander. Moments later the police arrived. As Wilson was wrestled to the ground, one of the officers grabbed the outside of the aforementioned pocket and immediately, according to her testimony, felt the presence of crack cocaine. The officers then relocated appellee to the Amtrak Police Office and removed a bag containing rocks of crack cocaine from Wilson's pocket.
 
 
 6
 On Wilson's motion, the district court suppressed that evidence. The court's reasoning, delivered orally, appears to be as follows: the court initially concluded that Wilson's flight after being approached by a police officer did not give the officers a reasonable basis for suspicion and chase. Implicitly, then, the district judge appears to have concluded that the seizure of Wilson would not even have qualified as a valid Terry stop. The court also determined that Wilson was in fact arrested when he was tackled by the police officers and that probable cause for an arrest was lacking at that point. The court, therefore, did not resolve the contradictions in the testimony relating to the reasonableness of the officers' fears that Wilson was armed, the reasonableness of the frisk, or the detection of the crack by "plain feel."
 
 II.
 
 7
 This case is governed by our prior decision in Jones. See United States v. Jones, 973 F.2d 928 (D.C.Cir.1992), reh'g granted and opinion vacated in part on other grounds, 973 F.2d 944 (D.C.Cir.1992). After offering to retrieve some papers from a bus, Jones "took off running." Id. at 929. The police gave chase, caught Jones, ordered him to the ground, and handcuffed him. Id. at 930. We readily concluded that "[t]he initial phase--the stopping of Jones, his being ordered to the ground and handcuffed, and his transfer to the car--was both consistent enough with the investigative and security purposes of a Terry stop, and short enough, to qualify as such." Id. at 931. As we explained, a "Terry stop does not turn into a full arrest merely because the officers use handcuffs and force the suspect to lie down to prevent flight, so long as the police conduct is reasonable." Id. A Terry stop "may also include forced relocation of the suspect." Id. (citation omitted). In light of Jones, the actions of the police in stopping Wilson and moving him to the Amtrak Police Station clearly qualified as a Terry stop.
 
 
 8
 Of course, the police require some "articulable suspicion" to detain a suspect for questioning. See Jones, 972 F.2d at 931. That suspicion was supplied by Wilson's actions in taking flight and abandoning his sole piece of luggage.
 
 
 9
 [The suspect's] flight and failure to obey [the officer's] order to stop supplied the necessary articulable suspicion. A suspect is "free to leave" a non-seizure interview, but when he does so by abruptly bolting after having consented to talk, the officers are free to draw the natural conclusions.
 
 
 10
 Jones, 973 F.2d at 931.
 
 
 11
 To be sure, unlike Jones, Wilson never consented to talk. But Wilson's behavior here was even more suspicious than Jones' because Wilson, in addition to fleeing, abandoned the only piece of luggage in his possession. Taken together, Wilson's conduct certainly gave rise to an articulable suspicion in the minds of the police officers sufficient to justify detaining appellee briefly for questioning. See Terry, 392 U.S. at 21. Because Wilson was fleeing, however, the police could not detain him without first giving chase and physically stopping him. If, as the district court apparently concluded, tackling a fleeing defendant amounts to an arrest for which probable cause is required, Terry stops would be outlawed. Defendants would simply disobey the police and run, knowing that the police would then need probable cause to chase and tackle them.
 
 
 12
 Accordingly, we conclude that the police officers had a sufficiently articulable suspicion to stop appellee for questioning when he suddenly took flight, and that the physical character of the stop--i.e. a "tackle"--did not convert the stop into a full fledged arrest.
 
 
 13
 Our conclusion does not dispose of this case. In order to uphold the seizure of the crack cocaine in this case, we would have to conclude, in addition, that the police officers had reasonable grounds to frisk Wilson's outer garments for a weapon, see Terry, 392 U.S. at 27, and that in the course of that frisk Officer Pena felt "an object whose contour or mass ma[de] its identity [as drugs] immediately apparent." See Minnesota v. Dickerson, 113 S.Ct. 2130, 2137 (1993). Those determinations, however, would turn on findings of credibility that we, as appellate judges, cannot make. Accordingly, we remand this case for appropriate factfinding.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 For the foregoing reasons, the judgment of the district court is reversed and the case remanded for additional findings.
 
 
 17
 So ordered.